UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             )
CELLECTIS S.A.,                                              )
                                                             )    Case No.
                       *Plaintiff*,                          )
                                                             )
         v.                                                  )
                                                             )    **COMPLAINT**
BRIAN BUSSER and BEAM THERAPEUTICS                           )
INC.,                                                        )
                                                             )
                       *Defendants*.                         )
                                                             )
                                                             )
------------------------------------------------------------ X

Plaintiff Cellectis S.A. ("Cellectis" or the "Company") by and through its undersigned attorneys, Crowell & Moring LLP, alleges upon knowledge as to itself and its own actions as well as upon information and belief as to all other matters, as follows:

## SUMMARY OF THE ACTION

1. This is a breach of contract and tortious interference matter.

2. Defendant Brian Busser ("Busser") is a former Cellectis Senior Scientist and Team Lead. As part of his employment, he was and still is subject to restrictive covenants contained in his Employment Agreement with Cellectis. Busser has breached those covenants by and through his current work for Defendant Beam Therapeutics ("Beam"). Beam knew of the Employment Agreement with is restrictive covenants, and wrongfully induced Busser to breach his obligations through his work for Beam.

3. Cellectis has been and will be irreparably harmed by Defendants' conduct and is therefore entitled to injunctive relief, as well as the full range of compensatory and consequential

damages. Additionally, Cellectis is entitled to recover all attorneys' fees, expenses and costs in having to bring this action.

## PARTIES

4. Plaintiff Cellectis S.A. is a French company with its headquarters in Paris, France. Cellectis's principal place of business in the United States is at 430 East 29th Street. New York, NY 10016.

5. Defendant Beam Therapeutics Inc. with a principal place of business at 26 Landsdowne Street, Cambridge, MA 02139.

6. Defendant Brian Busser was a Senior Scientist for Cellectis from approximately June 29, 2015 through February 1, 2019. Since approximately early February 2019, Busser has been employed by Beam as Senior Director. Busser resides at 437 New York Avenue NW, Washington, DC 20001.

## JURISDICTION AND VENUE

7. This Court has federal diversity jurisdiction pursuant to 28 U.S.C. § 1332, because Cellectis and each of the Defendants are residents of different states and the amount in controversy in this matter exceeds $75,000.

8. This Court has personal jurisdiction over all of the Defendants under principles of specific and general jurisdiction as each has sufficient contacts with New York. In addition, Busser has consented to jurisdiction in the Southern District of New York.

9. Venue in the Southern District of New York is appropriate under 28 U.S.C. § 1391 as a substantial part of the actions giving rise to the claims herein occurred in this District.

# FACTS

## I. CELLECTIS'S BUSINESS

10. Cellectis was founded and formed in Paris, France in 1999. Cellectis maintains its headquarters as well as laboratories in Paris. In addition, Cellectis opened offices and laboratories in New York City in 2015.

11. Cellectis is a pioneering clinical-stage biopharmaceutical companywhose technology enables it to address multiple unmet cancer needs. It does so by harnessesing the immune system to target and eradicate cancer cells. For patients with enough T-cells, Cellectis can create custom T-cells for therapy based on patients' own T-cells, called CAR-T therapy. But, it is Cellectis's "off-the-shelf" CAR-T products (UCART) that are on the precipice of transforming CART therapy. Unlike other immunotherapies that require a custom immunotherapy product for each patient, Cellectis uses gene editing to create cost-effective UCART products. These are made from healthy donors and are modified so that they can be used in any patient that does not have enough of their own T-cells to make a custom CAR-T product. In other words, UCART can be immediately available for patients regardless of immune levels and across all geographies. These UCART therapies are currently in Phase I clinical trials.

12. Cellectis is also developing its next innovative project through an hematopoietic stem cells (HSC) platform.[1] HSCs are found in a person's peripheral blood and the bone marrow. Autologous gene therapy in human hematopoietic stem cells (HSCs) has shown the potential to transform the treatment of genetic diseases of the blood and immune system. T cells produced from modified HSCs are capable of continuously replenish anti-tumor T cells that have

---

[1] HSCs are also referred to as Hematopoietic Stem and Progenitor Cells (HSPCs)

become less effective over time. Further, engineered HSCs may produce other types of immune cells in addition to T-cells thereby providing broader anti-tumor activity.

13. Cellectis has more than 19 years of expertise in gene editing based on its flagship TALEN® technology and pioneering electroporation system PulseAgile. These have enabled Cellectis to develop a new generation of immunotherapy product candidates with additional safety and efficacy attributes designed to prevent these immunotherapy products from attacking healthy tissues – unlike conventional cancer treatments. Further, these immunotherapy products are equipped to resist mechanisms that inhibit immune system activity. Unlike other treatments that use the patient's own T-cells – which get progressively weaker with each round of chemotherapy – Cellectis' allogeneic cells remain strong over multiple treatments.

## II. BUSSER'S EMPLOYMENT WITH CELLECTIS AND EMPLOYMENT AGREEMENT

14. Busser was hired by Cellectis as a Senior Scientist and Team Lead. Busser held this role from approximately June 2015 through approximately February 1, 2019.

15. At the time Busser was hired, he had no experience in genome editing and CAR-T. After he started, Cellectis provided him internal trainings on high level genome editing, CART development and bioinformatics techniques. At Cellectis's offering and expense, Busser also attended several scientific congresses to improve his knowledge in these subjects.

16. At or around the time of his hire, on or about May 25, 2015 and in consideration of his employment with Cellectis, Busser signed an Employment Agreement (the "Employment Agreement"). *See* Ex. 1 (Employment Agreement). Among other things, the Employment Agreement contains confidentiality provisions as well as post-employment non-compete and non-solicitation provisions.

17. In particular, Busser's Employment Agreement provides that for a period of one year after the end of his employment with Cellectis, Busser "will not compete, directly or indirectly, with the Company in North America, Europe, and Japan." Ex. 1 at ¶ 8(b)(i). The Employment Agreement prohibits Busser from "enter[ing] into or engag[ing] in any business which competes with the Company's Business." Id. This includes engaging in competitive activities as an "employee, agent, salesperson, consultant" and other specified roles. Id. at ¶ 8(b)(ii).

18. The Employment Agreement also provides that for a period of two years following the end of his employment with Cellectis, Busser will not, directly or indirectly, solicit, hire, employ, engage, affiliate with for profit, [or] retain . . . any person who was a Company employee or consultant or independent contractor at any time during the one (1)-year period prior" to the solicitation or hiring. Id. at ¶ 8(d)(ii).

19. As Senior Scientist and Team Lead, Busser led Cellectis's immunology unit within the United States and was responsible for a variety of crucial tasks necessary for research and development of Cellectis's treatments and products. These tasks included the following:

   a) experimental design and execution of cellular and molecular biology experiments;
   b) development of a new specificity assay to evaluate safety of the genome editing tool;
   c) managing and overseeing Cellectis's animal facility;
   d) coordinating development of a preclinical surrogate CART model using mouse cells;

  e) leading the Cellectis effort aiming to optimize genome technology in HSC and identifying opportunities for candidate products; and

  f) leading research associates on research and development of Cellectis's treatments and products.

  20. Busser was also involved with discovery efforts for therapeutic products, through clinical trials, and his work necessarily included preclinical safety assessments of these products during the discovery phase for these products.

  21. During his tenure at Cellectis, Busser was trained on and was using Cellectis's TALEN® system to produce CAR-T and U-CART systems. He also used the TALEN® system to modify HSCs – Cellectis's next generation product. In general, modifications to CAR-T, UCART, and HSC can be made using a variety of gene editing techniques, such as meganucleases, zinc finger nucleases, TALEN®, and CRISPR®. Essentially, all of these techniques represent different types of DNA "scissors" that scientists may use in making modifications. The types of genetic modifications made using these scissors, the identification of potential modification targets, and the techniques to make the selected modifications are key techniques for any individual working in this area, regardless of the type of "scissors" used. Busser learned all of these techniques while working at Cellectis and was in charge of a team of researchers engaged in these efforts.

  22. As part of his employment, Busser had access to key Cellectis confidential, proprietary, and trade secret information, including information about Cellectis's technology, processes, research data, and other information. He also benefited in the performance of his job by the tremendous goodwill that Cellectis has developed in the industry and with its customers.

### III. BEAM THERAPEUTICS

23. Beam is a direct competitor of Cellectis. Beam's business involves base gene editing with its CRISPR® product, which is directly competitive with Cellectis's TALEN® product.

24. Beam, like Cellectis, uses methods to precisely modify genomes. Both Beam and Cellectis are using the same types of cells in similar ways to treat similar indications. They are both involved in using these techniques in order to develop Car-T and HSC products.

25. As just one example, some recent Cellectis research involves the use of CAR-T cells to target and inactivate a particular gene (the "TRAC" gene) in tumor cells. In April 2019, Beam released an abstract of some of its research, which in turn uses CAR-T cells to target the TRAC gene. *See* Ex. 2 at 73-74 (excerpts of Molecular Therapy's "Clinical Trials Spotlight," describing Cellectis's research in this area) and at 74 (describing Beam's research).

26. Upon information and belief, Beam is currently engaged in developing a HSC program at its facilities. *See* Exhibit 3 (reflecting three job postings for research scientistis in this area available on Beam's website as of July 24, 2019). These research scientists that Beam is seeking should be able to "advance [Beam's] hematology programs through the use of precision engineering of hematopoietic stem and progenitor cells (HSPC)." *Id.* at 1.

27. Upon information and belief, Beam is seeking to create genetically modified HSCs for the treatment of blood-related disorders, including leukemia. These efforts are clearly competitive of Cellectis's HSC program.

28. Cellectis understands that Busser began working for Beam in or about early February 2019 as a Senior Director.

29. Beam directly competes with Cellectis's HSC program.

30. On information and belief, Busser's role at Beam involves some or all of the same functions that he performed at Cellectis, including work on HSCs, as well as directing strategies regarding that work and employees performing the same or similar work. He and Beam are benefiting from the training and skills that he obtained through training he received at Cellectis, outside training he received at Cellectis's expense, and the knowledge of Cellectis's confidential and proprietary information and goodwill in the industry that he gained while employed by Cellectis. In addition, the techniques, modification targets, research plans and other knowledge that Busser learned at Cellectis on the use of TALEN® are directly transferrable to use with CRISPR® at Beam.

31. On information and belief, Beam is soliciting the employment of current or former Cellectis employees for positions at Beam, including but not limited to the roles identified in Exhibit 3. It appears that Beam is developing and building a team to develop HSC program in competition with Cellectis.

### IV. CELLECTIS'S EFFORTS TO STOP BUSSER'S COMPETITION

32. In February 2019, after learning that Busser was employed by Beam, Cellectis sent letters to Busser and to Beam seeking further information and assurances that no breach of the Employment Agreement had occurred.

33. In response, on February 25, 2019, counsel for Beam and Busser responded, stating that neither Beam nor Busser were engaged in conduct that competes with Cellectis.

34. Thereafter, counsel for Cellectis and counsel for Beam and Busser engaged in several discussions over a period of several months about the nature of Beam's business and Busser's role at Beam in order to obtain assurances that Busser was not breaching the terms of his Employment Agreement with Cellectis. During these discussions, Beam's counsel

repeatedly sought to assure Cellectis that Busser's role at Beam does not involve activities that are competitive with Cellectis's business.

35. After engaging in these good faith discussions, Cellectis has since obtained further information about Beam's and Busser's competitive activities, both with respect to CAR-T and with respect to efforts to develop an HSC program. *See* Ex. 2 (April 2019 ABSTRACT) at 73-74 (demonstrating that Beam is engaged in the same or similar research on CAR-T cells as Cellectis).

36. Beam's counsel's representation that the two companies are not competitors is also belied by the fact that Beam's recent online solicitations seek candidates with knowledge of CAR-T techniques and the TALEN® system. See Exhibit 3. These solicitations are also for scientists and researchers to assist Beam to "advance" its "hematology program through the use of precise engineering of hematopoietic stem and progenitor cells (HSPC)." *Id.* As set forth in the proceeding paragraphs, this program is one that that Cellectis has been actively involved in since before the time that Busser was employed at Cellectis.

37. Further, this solicitation shows that Beam is actively seeking individuals with experience in gene editing technologies, including Cellectis's TALEN® system and aggressively building its HPC business. In view of Busser's employment at Beam, Cellectis has good reason to believe that the techniques, modification targets, research plans and other knowledge that Busser learned at Cellectis have already been provided to Beam and is being used to to compete against Beam.

## COUNT I
## (Breach of Contract)
## (Against Defendant Busser)

38. Cellectis realleges and incorporates all previous allegations set forth in Paragraphs 1-37 above as if fully set forth herein.

39. Busser freely and voluntarily entered into the Employment Agreement, which is a valid and enforceable contract.

40. At all relevant times, Cellectis has fully performed its obligations under Busser's Employment Agreement.

41. As is described in more detail in the foregoing allegations, Busser agreed in the Employment Agreement to various restrictions during and after his employment with Cellectis, including various restrictions on the use and disclosure of Confidential Information as well those pertaining to non-competition with Cellectis's business in several ways and non-solicitation of, among others, Cellectis's employees, customers, and prospective customers for a one-year period thereafter.

42. Defendant Busser has materially breached and is continuing to materially breach various provisions of the Employment Agreement, in several ways, including but not limited to by becoming an employee of a company – Beam – that competes with Cellectis's business within the one-year post-employment restricted period and, upon information and belief, performing a role for Beam that directly competes with Cellectis.

43. As a direct and proximate result of Busser materially breaching the Employment Agreement, Cellectis has incurred substantial damages.

44. In Section 8(i) of the Employment Agreement, Busser agreed that "the remedy at law available to the Company for breach of any of [his] obligations . . . would be inadequate."

He also agreed that "in addition to any other rights or remedies that the Company may have at law or in equity, temporary and permanent injunctive relief may be granted in any proceeding which may be brought to enforce any provision" of the agreement contained in Busser's post-employment restrictive covenants, including the non-competition provision.

45. As a consequence of Busser's breach of the Employment Agreement, Cellectis has suffered and will continue to suffer irreparable harm and loss, and has sustained damages including but not limited to the loss of capital, loss of valuable business, loss of profits and future profits, and loss of good will, in an amount to be determined at trial, which damages are ongoing and continue unabated at the time of the filing of this Complaint.

46. Cellectis is entitled to full injunctive relief preventing actual, continued or threatened breaches by Defendant Busser of obligations set out in the Employment Agreement.

## COUNT II
### (Tortious Interference with the Employment Agreement)
### (Against Defendant Beam)

47. Cellectis realleges and incorporates all previous allegations set forth in Paragraphs 1-46 above as if fully set forth herein.

48. The Employment Agreement between Busser and Cellectis is a valid and enforceable contract.

49. Defendant Beam was aware of the Employment Agreement and its terms, including without limitation, the confidentiality, non-solicitation and non-compete provisions contained therein.

50. As detailed in the foregoing allegations, Defendant Busser breached the Employment Agreement by, among other things: becoming employed by a business that

competes with Cellectis within during the one-year post-employment restricted period and soliciting Cellectis's employees for employment at Beam.

51. Upon information and belief, Defendant Beam actively and affirmatively took steps to induce or cause Busser to breach the Employment Agreement.

52. Defendant Beam had no legal rights to interfere with the Employment Agreement and there is no justification for its conduct.

53. As a direct and proximate result of Defendant Beam's conduct, Defendant Busser breached the Employment Agreement and his restrictive covenants contained therein.

54. As a direct and proximate result of Defendant Beam tortiously interfering with Defendant Busser's contractual obligations, Cellectis has suffered and will continue to suffer irreparable harm and loss, and has sustained damages including but not limited to the loss of capital, loss of valuable business, loss of profits and future profits, and loss of good will, in an amount to be determined at trial, which damages are ongoing and continue unabated at the time of the filing of this Complaint.

55. Cellectis is also entitled to all necessary injunctive relief resulting from Defendant Beam tortiously interfering with Defendant Busser's contractual obligations.

## REQUEST FOR RELIEF

Cellectis respectfully requests that this Court enter judgment in Cellectis's favor, granting the following relief against the Defendants:

    (a) issuing a preliminary and permanent injunction requiring Defendant Busser to abide fully by the confidentiality, non-compete and non-solicitation provisions Employment Agreement;

(g)     issuing a preliminary and permanent injunction requiring Defendant Beam to cease and desist in its tortious interference with the Employment Agreement between Busser and Cellectis;

(h)     entering judgment in Cellectis's favor and awarding full compensatory and consequential damages to Cellectis and against any and/or all Defendants jointly and severally, in an amount to be determined at trial, factoring in all interest, costs and expenses;

(j)     awarding Cellectis punitive damages to the extent permitted by applicable law;

(k)     awarding Cellectis its reasonable attorneys' fees and costs incurred in bringing and having to pursue this action; and

(l)     providing Cellectis with such other and further relief as the Court may deem just and proper.

Dated: New York, New York
        July 25, 2019

                                      Respectfully submitted,

                                      **CROWELL & MORING LLP**

                                      By:    /s/ Eric Su
                                                  Eric Su
                                                  590 Madison Avenue
                                                  New York, NY 10022
                                                  (212) 223-4000
                                                  esu@crowell.com

                                        *Attorneys for Plaintiff Cellectis S.A.*

18184493_1.docx